James Edward HOWARD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2008–CA–002075–MR.

Court of Appeals of Kentucky.

Feb. 19, 2010.

Discretionary Review Denied by Supreme Court Sept. 15, 2010.

Linda Roberts Horsman, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.

Before LAMBERT and THOMPSON, Judges; KNOPF,[1] Senior Judge.

*OPINION*

LAMBERT, Judge.

James Edward Howard appeals from the McCracken Circuit Court's final judgment of conviction for sexual abuse in the

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

first degree and resisting arrest, for which Howard received an aggregate sentence of ten years' imprisonment. After careful review, we affirm the trial court's judgment of conviction and sentence.

On May 22, 2007, Dr. Fred Mushkat and Nurse Karen Waddley were on duty in the Western Baptist Hospital Emergency Room in Paducah, Kentucky, when K.H. and her husband brought five-year-old B.H. into the emergency room after they noticed B.H. rubbing her crotch. Dr. Mushkat and Nurse Waddley examined B.H., and their examination revealed evidence that the young child had been sexually abused. Dr. Mushkat noted that during his exam, B.H. had numerous abrasions, scratches, and rawness around her labia and the surrounding area.

Nurse Waddley collected information from B.H. so that she could properly assess and treat B.H. in the emergency room. She collected the child's chief complaint, which was: "Uncle Pee Wee took my panties off ... Pee Wee has been teaching me. He told me to pull my pants down and move back and forth on him." Nurse Waddley learned that Pee Wee lived at B.H.'s home and that the injuries occurred approximately five days prior on May 17, 2007. Overall, Nurse Waddley observed that B.H. was rather dirty and had several other bruises on her body. B.H.'s injuries were consistent with what she had told Nurse Waddley.

The McCracken Police Department and the Kentucky State Police investigated the case. "Uncle Pee Wee" was identified as the appellant, Howard, and he agreed to speak to the police for the first time on May 24, 2007. Howard told McCracken County Sheriff's Deputy Caskey that he had lived in the same residence as B.H. for about one year. On the day in question, Howard had been watching B.H. while the rest of the family members were off on a gambling trip. Howard said that he was only alone with B.H. for between ten and thirty minutes. Howard initially told Caskey that B.H. was a liar, that she never had her panties off in his presence, and that she was never up in his lap, thus denying all the allegations.

On October 3, 2007, Howard was re-interviewed by the police, following collection of DNA evidence. At this point, Howard's story changed. Howard told Kentucky State Police Officer Bruner that B.H.'s mother had asked him to watch B.H. after she got off the school bus. Howard indicated that he was outside burning garbage when B.H. got off the school bus, and he went into the residence with her to watch television. Howard stated that as he sat on the couch, B.H. started acting "goofy" in a "sexual manner," kind of like a "strip dancer." He asserted that B.H. then took off her pants and panties and climbed onto the couch with Howard. Howard alleges that he told her to quit but that B.H. would not listen and as she crawled onto him, he had to physically push her off him.

About this time, Howard alleges that his other sister, Marie, called and he told Marie that B.H. would not behave but otherwise did not tell her what was happening. At this point during the interview, Howard admitted to initially lying to the police during his first interview. Howard then told Officer Bruner that after his sister's phone call, he went into a bedroom to sit on a bed and relax. Howard alleges that B.H. followed him into the bedroom, still acting in a sexual manner. Howard stated that B.H. then tried to crawl up on to him as he was on his bed. Howard conceded that B.H.'s panties were off and that at some point B.H. was in his lap. Howard opined that it seemed like B.H. was getting ready to "ride his penis" and that she sort of startled him, but he denied having

an erection. Per Howard, B.H. then whispered, "F me," which Howard knew to mean "f* * * Me" because B.H. was having trouble pronouncing the word "fuck." Howard claims he responded, "Heck no!"

Howard denied that his penis was outside of his pants during any of the above activities. He did concede, however, that "[B.H.] might have been able to rub up and down on my clothes." When asked if he was wearing underwear on that occasion, Howard replied, "I doubt it."

Howard was arrested and charged with sexual abuse in the first degree. When he was arrested, Howard resisted arrest and fought police. Howard was eventually indicted on one count of sexual abuse in the first degree and resisting arrest.

Howard's trial was conducted in August 2008. A competency hearing was held to determine if B.H., who was seven years of age at the time of the trial, was competent to testify. The trial court determined that B.H. was competent and she testified before the jury. When asked who Pee Wee was, B.H. replied that he "done bad stuff." B.H. testified that Pee Wee "pulled down my panties and made me get into his lap and slide back and forth." B.H. asserted that she and Pee Wee were alone when this activity occurred. She recalled telling her mother that Howard made her rock back and forth on him, and she remembered talking to a male doctor and a lady nurse at the hospital but could not remember what she said to them. B.H. did remember telling the nurse that "Uncle Pee Wee took my panties off." B.H.'s memory was fuzzy as to where the sex acts occurred, but she did recall that it was inside a house and that Howard lived in that house. B.H. could not remember what she told Detective Caskey.

Later in her testimony, B.H. recalled that Howard was at the house when she got off the school bus. She testified that she was facing away from Howard on his lap and that he took her pants off. B.H. recalled that Howard had a "goober"[2] but denied that Howard's "goober" was out while she was on his lap. She did not recall making a contradictory statement to the police.

Nurse Waddley testified as to her role in the treatment of B.H. as set forth previously. She also testified that B.H. told her that Howard pulled down her panties, made her get onto his lap, and rock back and forth. B.H. told Waddley that this occurred as Howard was sitting on the foot of a bed and that the events occurred approximately a week before her visit to the emergency room.

Detective Caskey testified about his interview with Howard as set forth above, as well as his interview with B.H. B.H. told Caskey that she was facing Howard while she was on his lap and that Howard still had his pants on but that they were unzipped. However, B.H. related to Caskey that Howard pulled his "goober" out and described that she was basically straddling Howard, her legs over his, with his "goober" out of his pants. According to B.H., Howard told her to get on his "goober" and rock back and forth.

Howard took the stand in his own defense. He testified that his only source of income is a Social Security disability check, and on the day in question, he was not off gambling with the rest of the family because he was "broke." He asserted that when B.H. got home that day, she started misbehaving, dancing, and taking off her clothes. Howard told the jury how B.H. tried to climb onto him and stated that he pushed her off. He denied the allegations

2. B.H. referred to a penis as a "goober" and    to her vaginal area as a "goose."

made by B.H. He told the jury that five-year-old B.H. asked him to "F me." He described B.H.'s allegations as "crazy." On cross-examination, Howard admitted that he initially lied to the police in his first statement.

The jury rejected Howard's defense and found him guilty of first-degree sexual abuse and resisting arrest. Following the truth in sentencing phase, the jury recommended an aggregate sentence of ten years, and judgment was imposed on October 2, 2008. This appeal now follows.

▮ In his first assignment of error, Howard argues that B.H. was not competent to testify and that the trial court erred in so ruling during the competency hearing on May 20, 2008. Specifically, Howard claims that B.H. was not able to give particular examples of statements that were lies and statements that were truth.

The threshold question of witness competency in Kentucky is controlled by KRE 601. Under that rule, all persons are qualified to testify as a witness unless the trial court determines that they:

(1) Lacked the capacity to perceive accurately the matters about which he proposes to testify;

(2) Lacks the capacity to recollect facts;

(3) Lacks the capacity to express himself so as to be understood, either directly or through an interpreter; or

(4) Lacks the capacity to understand the obligation of a witness to tell the truth.

▮ In light of this presumption of competency, the burden of proving incompetence rests on the party that asserts the incompetence. *Price v. Commonwealth,* 31 S.W.3d 885, 891 (Ky.2000). The determination of whether a child witness is competent to testify is within the sound discretion of the trial court, and unless there is a clear abuse of discretion, a trial court's ruling on competency will not be reversed on appeal. *Jarvis v. Commonwealth,* 960 S.W.2d 466, 468 (Ky.1998) (citing *Wombles v. Commonwealth,* 831 S.W.2d 172, 174 (Ky.1992), and *Pendleton v. Commonwealth,* 685 S.W.2d 549, 551 (Ky.1985)).

▮ When the competency of a child witness is at issue, "it is then the duty of the trial court to carefully examine the witness to ascertain whether she (or he) is sufficiently intelligent to observe, recollect, and narrate the facts and has a moral sense of obligation to speak the truth." *Pendleton v. Commonwealth,* 83 S.W.3d 522, 525–526 (Ky.2002) (quoting *Moore v. Commonwealth,* 384 S.W.2d 498, 500 (Ky. 1964)). An appellate court "may consider a trial court's competency determination from a review of the entire record, including the evidence subsequently introduced at trial." *B.B. v. Commonwealth,* 226 S.W.3d 47, 49 (Ky.2007) (internal citations omitted).

In the instant case, the trial court conducted an adequate competency hearing, whereby B.H. was asked whether she understood the nature of telling the truth and to describe other events in her life to show that she adequately remembered most events. Specifically, the trial court questioned B.H. about school, her birthday celebration, and past immunizations at the doctor's office. She was able to recall those events and otherwise had no impediments to testifying. B.H. demonstrated a moral obligation to tell the truth and was able to recall most of the events surrounding the sexual abuse. Thus, we agree with the Commonwealth that B.H. was competent to testify and find no abuse of discretion by the trial court in allowing her testimony at trial.

Howard points to the fact that B.H. had inconsistent statements as to the direction she was facing on Howard's lap. He fur-

ther points out that she was not able to remember all the details of the alleged abuse. However, it seems that Howard is confusing the issue of B.H.'s credibility with that of competency, which are two different issues entirely. The jury was free to judge B.H.'s credibility as a witness and to give her testimony the appropriate consideration. Accordingly, we find no error by the trial court in finding B.H. competent to testify at Howard's trial.

■ In his second assignment of error, Howard contends that the trial court erred in admitting statements by B.H. to Nurse Waddley. Howard argues that the trial court should have excluded statements to Nurse Waddley identifying Howard as the perpetrator. Nurse Waddley collected B.H.'s chief complaint, in B.H.'s own words: "Uncle Pee Wee took my panties off. Pee Wee has been teaching me. He told me to move my pants down and move back and forth on him." Waddley learned that Pee Wee lived with B.H. when the injuries occurred. Howard contends that the identification of him as the perpetrator was improperly admitted into evidence and constituted improper hearsay.

As a general rule, out of court statements offered at trial to prove the truth of the matter asserted are not admissible. However, statements made for the purpose of medical treatment or diagnosis may be admitted as an exception to the general exclusion of hearsay. KRE 803(4). Under this rule, hearsay statements may be admissible if they are important to an effective diagnosis or treatment. The statements must describe medical history, past or present symptoms, pain, sensations, or the "inception or general character of the cause or external source" of the injuries. KRE 803(4); *Belt v. Commonwealth*, 2 S.W.3d 790, 792–793 (Ky.App. 1999).

Howard argues that the identification of him as the perpetrator has no bearing on B.H.'s pain, symptoms, or sensations. To a certain extent, we agree. However, we find the identification of Howard as the perpetrator to be relevant regarding the cause of the injuries. Furthermore, in *Garrett v. Commonwealth*, 48 S.W.3d 6 (Ky.2001), the Kentucky Supreme Court elaborated on what information is appropriately introduced under the KRE 803(4) exception:

> There has been some dispute as to what information is "reasonably pertinent" to diagnosis or treatment. For example, statements identifying the perpetrator have been held "reasonably pertinent" to diagnosis *and* treatment of a child sexual abuse victim where the treatment was for psychological injuries and the abuser lived with the child, the theory being that the abuse would likely continue as long as the child remained in the same household with the abuser.

*Id.* at 11 (citing *United States v. Renville*, 779 F.2d 430, 436–37 (8th Cir.1985); *Edwards v. Commonwealth*, 833 S.W.2d 842, 844 (Ky.1992) (decided prior to adoption of the Kentucky Rules of Evidence)).

In the instant case, Howard lived with B.H. and there was a reasonable probability that had the identity of the perpetrator not been given to Nurse Waddley, the abuse would have continued. Further, Nurse Waddley testified that the purpose of collecting the medical history from B.H. was to provide physical **and** emotional treatment and support. The information was needed to help determine how to medically treat B.H. Thus, the statements made by B.H. as to how the injuries occurred were admissible as statements for the purposes of medical treatment, and the trial court did not abuse its discretion in admitting Nurse Waddley's testimony.

■ Howard next argues that the trial court improperly denied his motion for a directed verdict of acquittal. Specifically, Howard alleges that B.H.'s testimony was unreliable, and he therefore was entitled to a directed verdict. The proper standard for determining whether a directed verdict is warranted was articulated in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). There, the court stated:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Id.* at 187. On appeal, the standard is whether it was clearly unreasonable for the jury to have found guilt. *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

■ Howard argues that B.H.'s testimony was contradictory and therefore not reliable. However, as stated above, the trial court does not determine the credibility of witnesses when ruling on a motion for directed verdict and instead only determines whether the evidence is sufficient for a jury to find guilt. Therefore, Howard's argument fails as he is essentially attacking B.H.'s credibility and not arguing that there was otherwise no evidence against him. The trial court did not err in denying Howard's motion for a directed verdict, and it was not clearly unreasonable for the jury to have found Howard guilty.

■ For his fourth assignment of error, Howard argues that the trial court erred by excluding exculpatory evidence. Howard argues that the trial court improperly prevented him from introducing evidence, contained in a family court investigatory record, that B.H. had been exposed to pornography and sex toys. Howard argues that he sought to introduce this information because it "tend[ed] to explain how a five-year old could be so sexualized as to strip and attempt to seduce a grown man...." Howard also contends he was improperly prevented from obtaining B.H.'s counseling records from Child Watch and objects to the trial court's denial of his request to present testimony of B.H.'s Guardian Ad Litem (GAL) at trial. A careful review of the record indicates that the trial court did not err in excluding the above evidence.

Howard filed a notice of intent under KRE 412 to introduce evidence that B.H. had been exposed to sex toys and pornography. Howard argued that KRE 412(b)(1)(c) allowed for the admission of this evidence. *Id.* (setting forth exception for "any other evidence directly pertaining to the offense charged"). The motion was denied on May 20, 2008, after brief argument on the record.

■ We agree with the Commonwealth that the trial court properly excluded the evidence because it violated the Rape Shield Law as set forth in KRE 412. Under KRE 412(a), evidence of other sexual acts of a victim are inadmissible to prove "that any alleged victim engaged in other sexual behavior" or "to prove any alleged victim's sexual predisposition." KRE 412 was enacted to protect the interests of a victim from the admission of evidence that is neither material nor relevant to the crime charged. *Anderson v. Commonwealth*, 63 S.W.3d 135, 140 (Ky.2001) (internal citation omitted). The trial court

has broad discretion when determining the admissibility of such evidence, and reversal is not required unless the trial court's ruling constitutes an abuse of discretion. *Capshaw v. Commonwealth*, 253 S.W.3d 557, 564 (Ky.App.2007) (internal citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

In the instant case, evidence that B.H. could have been exposed to sex toys and pornography is precisely the type of evidence that the rape shield law was meant to exclude from trial. The sole purpose of such evidence would have been to show that B.H. engaged in sexual behavior and had a sexual predisposition. We find no merit in Howard's argument that the evidence pertains directly to the offense charged under KRE 412(b)(2). In fact, it is not a defense that B.H. initiated sexual contact because she was incapable of consent. KRS 510.110(1)(b)(2). The fact that B.H. may have seen pornography before does not reflect on the fact that Howard had sexual contact with her to the extent he suffered abrasion injuries in her genital area. We find no abuse of discretion by the trial court in excluding the evidence at trial.

Howard also argues that the trial court erred in excluding B.H.'s counseling records from Child Watch. Those records were excluded as privileged under KRE 506, which provides that statements to counselors have a general privilege from disclosure to third parties. Howard cites to no authority to support his argument on this point and makes no argument concerning how such records were essential to his defense. Accordingly, we find no abuse of discretion by the trial court in excluding B.H.'s records from Child Watch.

Howard also argued that the trial court improperly prevented him from presenting the GAL's testimony at trial. However, statements made by B.H. to her GAL are protected by the well-established attorney-client privilege. *See* KRE 503. The alleged statements were made to the GAL by B.H. in the course of her legal representation of B.H. The privilege was asserted by the GAL on behalf of B.H. "[W]hen a communication is protected by the attorney-client privilege it may not be overcome by a showing of need by an opposing party to obtain the information contained in the privileged communication." *The St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 777 (Ky.2005). The fact that the statements were set forth to the family court does not amount to waiver of the privilege, since family court proceedings are confidential. *See* KRS 610.320. The trial court did not err in prohibiting the introduction of the GAL's testimony at trial concerning statements made by B.H. to the GAL.

For his final assignment of error on appeal, Howard makes several allegations of prosecutorial misconduct. When reviewing claims of prosecutorial misconduct, the required analysis by an appellate court "must focus on the overall fairness of the trial, and not the culpability of the prosecutor. . . . A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 411–412 (Ky.1987) (internal citation omitted). Reversal based on misconduct of the prosecutor is only warranted if the misconduct is so severe as to render the entire trial fundamentally unfair. *Partin v. Commonwealth*, 918 S.W.2d 219, 224 (Ky.1996) (overruled on other grounds by *Chestnut v. Commonwealth*, 250 S.W.3d 288 (Ky.2008)).

■ Howard first alleges error in a comment made by the prosecutor as defense counsel was re-examining Howard after cross-examination by the prosecutor. Defense counsel asked Howard, "Is [the prosecutor] twisting your words here . . . are you upset with him?" The Commonwealth objected and before a ruling could be obtained, Howard replied, "It is his job." The prosecutor then commented, "Watch your lawyer attempt to do his job." The Commonwealth claims that the prosecutor was simply responding to an improper line of questioning by defense counsel and that any error was harmless. While we agree that the prosecutor's comment was clearly improper, we do not find that this comment amounts to a statement that would render the entire trial fundamentally unfair. Thus, any error was harmless.

■ Howard next complains that during the penalty phase closing arguments, the prosecutor made the comment, "I'd almost be disappointed if I didn't get interrupted." After finishing his closing argument, the prosecutor told the jury that he believed some of the objections made were only made for purposes of interruption. We disagree with Howard that these statements were misconduct. Instead, it appears that the prosecutor was commenting on the tactics of defense counsel, which, as stated above, the prosecutor is clearly entitled to do. *See Slaughter, supra.* Thus, we find no prosecutorial misconduct in these statements.

■ Howard further complains that the prosecutor improperly told the jury during the penalty phase that their verdict was correct. Again, we find no error. The prosecutor was simply stating that he thought the jury had reached the right verdict and as this was subsequent to the guilt phase, we agree with the Commonwealth that no error occurred. Because the prosecutor was seeking conviction in the first place, it seems obvious that he would feel a guilty verdict was correct. There simply was no error in this statement.

■ Howard also takes issue with the prosecutor's statement during closing arguments wherein the prosecutor opined that rape required penetration and that Howard was not indicted for penetration because the prosecution could not prove penetration. Howard asserts that the prosecutor was thereby alleging that Howard was guilty of rape. In fact, the very opposite was true. The prosecutor was openly admitting that they did not have enough evidence to convict Howard of rape and, therefore, went with a lesser offense. We find no error in this statement, and in the alternative, we hold that any error was harmless.

■ Howard also argues that the prosecutor asserted another fact that was not in evidence. During the guilt phase closing argument, the prosecutor told the jury that Howard admitted that he masturbated inside the residence one to three times a day. Howard asserts that evidence of his masturbation was unsupported by the evidence and clearly was meant to disgust the jury. Howard fails to note in his brief, however, that while such evidence was originally excluded, when Howard opened the door, the trial court allowed the evidence to come in during Howard's testimony. Thus, we find no misconduct on the part of the prosecutor because the evidence was introduced during Howard's testimony, and the prosecutor is permitted to comment on the evidence.

Howard recounts several other acts he feels constituted prosecutorial misconduct but he fails to develop any of those argu

ments in his brief. Thus, we will not address those arguments on appeal.

In summation, we find all of Howard's allegations of error by the trial court to be without merit. Therefore, finding no reversible error by the McCracken Circuit Court, we affirm the final judgment of conviction entered on October 2, 2008.

KNOPF, Senior Judge, concurs.

THOMPSON, Judge, concurs in result only.