RENDERED: JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0304-ME

EVANGELINE ALLEN                                               APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                       HONORABLE A. CHRISTINE WARD, JUDGE
                          ACTION NO. 22-D-501227-006


BYRON NEWTON AND T.N., A
MINOR CHILD[1]                                            APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

JONES, A., JUDGE: Evangeline Allen appeals from an order of the Jefferson

Circuit Court, Family Division ("family court"), denying her petition for a

domestic violence order ("DVO") on behalf of her ten-year-old minor child, T.N.

("Child"), against Child's father and Allen's former husband, Byron Newton.

After reviewing the record and applicable law, we vacate and remand.

---

[1] Pursuant to Rules of Appellate Procedure ("RAP") 5(B)(2), we refer to the minor child using only his initials.

# I. BACKGROUND

The record reflects that Allen and Newton have a contentious history. They divorced in 2022 and share one child, T.N., who is approximately ten years old and has been diagnosed with Autism Spectrum Disorder. This action commenced on February 21, 2025, when Allen filed a petition for an order of protection on Child's behalf.

Allen's petition alleged:

[On July 23, 2024 in Jefferson County, Kentucky] Byron Newton had visitation on the week [of] February 13th to February 16th. Our special needs child stated that he was deprived of food and he was beat with a belt because he makes a lot of mistakes. Our child states that Byron Newton allows his girlfriend to beat him with a belt also. Our child has said that he has been sick at Byron Newton's house and he tells him that he is faking and does nothing for him. I took our child to the hospital on January 1, 2025, because Byron Newton had our child from December 23, 2024 to December 30, 2024 for Christmas Holiday and he was sick with a viral infection and our child [said] that Byron Newton only fed him prunes and prune juice. Our child also disclosed to the hospital staff that he was grabbed by the neck and shaken around by Byron Newton because he did not want to do chores. I have to add that our child has Autism Spectrum Disorder Level 2. The hospital did contact CPS but I did file a police report and Crimes Against Children is currently investigating[.] I was encouraged by the LMPD Social Worker working on this case to file this [emergency protective order] EPO to try and keep our child safe. Our child has been beat with a belt, kicked, punched in the face, deprived of food, bound with tape, and grabbed by the neck by Byron Newton. He has also allowed other people to abuse our child such as his

-2-

mother, stepfather, and his current girlfriend. Our child also says that he has been left outside alone while Byron Newton and his girlfriend leave in her car. There is a history of domestic violence and child abuse with Byron Newton. While we were married, I was grabbed by the neck and pushed into walls by Byron Newton because I would not have sex or because I was trying to get something back from him that belonged to me. I have also been violated by him while I was sleeping. Byron Newton has also abused my daughter, which was his stepdaughter at the time, while I would go to work. He would come into her room and grab her by the back of the neck and shove her face into her bed so that he could beat her with a belt. He would also enter into her room without knocking while she would be changing clothes. Although my daughter is 21 years old now, the abuse that she has suffered at the hands of Byron Newton still is traumatic for her. She has went through self harm and wanting to kill herself. I am very worried about my special needs child. I have tried to get me and my children away from Byron Newton. I have had to move twice and I have had my address stolen by Byron Newton and he has showed up at my home and had his mail and his packages sent to my home. Recently, Byron Newton has used my personal information to sign up for things as if I have done this. I have had to call the police and file several police reports. Right now I have a no contact order against Byron Newton but I am very concerned for the safety of my special needs child. Our child even says that he is afraid to go to his father's house and he said that Byron Newton and his girlfriend will get him back for telling what is going on at his house.

(Record at 1-2.)

The family court entered an emergency protective order on February 21, 2025. After Newton was served, he moved to amend the order and requested that Allen be held in contempt and ordered to serve jail time for allegedly

-3-

interfering with his parenting time. Allen filed a competing motion seeking jail time for Newton.

On March 6, 2025, the family court convened a hearing to determine whether to enter a domestic violence order or dismiss the petition. Child's guardian *ad litem* ("GAL"), Pashens Fitzpatrick, moved to dismiss. She explained that she had reviewed the matter and believed many of Allen's allegations had already been addressed in other proceedings pending before the family court, including the parties' custody action and an ongoing dependency, neglect, and abuse ("DNA") case. She further advised that she had spoken with the Cabinet's caseworker, who was not present at the hearing, and who indicated that the Cabinet was not moving forward at that time. Attorney Fitzpatrick also stated that Child had undergone a forensic interview and that a detective continued to investigate. Finally, she asserted that the allegations raised in this action would be more appropriately addressed on the DNA docket, where the Cabinet's investigation remained ongoing.

As the family court understood the matter, Allen alleged only a single incident occurring after the parties' January custody hearing. The court stated that the allegations could be proved only through Child's testimony and further observed that, given Child's young age and special needs, any statements would need to be obtained through a forensic interviewer. As Attorney Fitzpatrick

advised, Child had been forensically interviewed, but the investigation remained ongoing. The court also noted that, even if Child could testify independently, he was not present because he was at school. The court further expressed concern that, due to Child's vulnerability and special needs, he was susceptible to influence and had been in Allen's continuous care for two weeks following entry of the emergency protective order. The family court neither read the petition into the record nor questioned the parties regarding the allegations set forth therein.[2]

The family court also noted that this was the sixth petition Allen had filed against Newton, all of which had been dismissed. The court expressed concern that Allen had acted to restrict Newton's recently expanded parenting time following the custody hearing. It further stated that the DNA docket was the more appropriate forum because the Cabinet was involved there, and additional parental protections were in place. The family court indicated it would reserve judgment in the DNA action pending the results of the forensic interview.[3]

Without receiving any testimony, the family court dissolved the emergency protective order and dismissed the domestic violence action without

---

[2] The family court did ask Allen to state more specifically what proof she had regarding events occurring after the January hearing; however, this inquiry was not testimonial in nature, and Allen was not placed under oath.

[3] The family court remained on the record for approximately thirty-five minutes. Much of the first portion of the proceeding was devoted to the parties' competing motions seeking jail time, as well as discussion of the proof Allen could present.

prejudice, stating that there was no basis to proceed. In its calendar order, the court explained that the petition was dismissed because Child was not present to testify, and the Child's GAL did not wish for Child to testify. The court further stated that Child was being placed in a loyalty bind by Allen; that the matter was more appropriately addressed with the involvement of Child Protective Services and/or in the parties' ongoing custody proceedings; and that Child, who has autism, had already undergone a forensic interview and was the subject of an ongoing Cabinet investigation. The family court expressed concern that the petition had been filed to deny Newton parenting time, referenced its recent January 29 custody hearing and its history with the parties, and stated that it had found Newton to be credible and Allen's prior allegations not credible. The motion to dismiss was granted, and both parties' motions seeking jail time were denied, with the court's oral findings and conclusions incorporated by reference.

Acting without the assistance of counsel, Allen filed this appeal. On appeal, Allen's primary argument is that the family court violated her due process rights by denying her an evidentiary hearing, in contravention of KRS[4] 403.730. She asks this Court to reinstate the emergency protective order and vacate the order dismissing her petition for a domestic violence order. Allen also requests removal

---

[4] Kentucky Revised Statutes.

of the family court judge and Child's GAL on the ground that they are biased against her.

## II. BRIEFING DEFICIENCIES

We first note that Allen is proceeding without the assistance of counsel. Although we do afford some leniency to *pro se* litigants, our briefing rules apply equally to all litigants, and those acting *pro se* are not exempt from compliance. *Taylor v. Westrock Services, LLC*, 719 S.W.3d 67, 69–70 (Ky. App. 2025); *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Allen's brief lacks preservation statements as required by RAP 32(A)(4), contains insufficient citations to the record in violation of RAP 32(A)(3) and (4), and omits the judgment under review contrary to RAP 32(E)(1). Under RAP 10(B), this Court could strike Allen's brief and dismiss the appeal as a sanction for failure to substantially comply with the RAPs.

Additionally, we note that Newton has failed to file an appellee brief. For Newton's failure, we could accept Allen's statement of the facts as correct, reverse if we felt Allen's brief reasonably sustained such an action, or regard Newton's failure to file a brief as a confession of error and reverse without considering the merits. RAP 31(H)(3).

After considering the available options, we conclude that sanctions are not warranted. The record is neither voluminous nor procedurally complex; it

consists primarily of Allen's petition, the EPO order, the DVO hearing, and the order of dismissal. We are also mindful that Allen initiated this action seeking protection for her minor child, who has special needs, and that she made at least a rudimentary effort to comply with the RAPs, including citing legal authority in support of her arguments. In circumstances such as these, the interests of the child outweigh strict adherence to our briefing rules, particularly when the litigants are proceeding *pro se*. *Swan v. Gatewood*, 678 S.W.3d 463, 469 (Ky. App. 2023). Accordingly, we elect to review the merits of Allen's appeal and decline to impose any penalty on Newton for his failure to file a brief.

### III. ANALYSIS

The purpose of Kentucky's domestic violence statutes is to provide victims with "short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible[,]" while also equipping law enforcement officers with the means to protect victims. KRS 403.715. To that end, the statutes establish an orderly and expeditious procedure for the issuance and adjudication of domestic violence orders.

Once a petition for an order of protection is filed, the court must immediately review it. KRS 403.730(1)(a). If the court determines that the petition sets forth the existence of "domestic violence and abuse," it "shall summon[] the parties to an evidentiary hearing." *Id.* If the review indicates that no

such basis exists, the court may consider an amended petition or dismiss the petition without prejudice. *Id.* Here, the family court necessarily concluded that Allen's petition alleged conduct which, if true, would constitute domestic violence and abuse, as it entered an emergency protective order and summoned Newton to a hearing.

Having determined that the petition set forth the existence of domestic violence and abuse, the family court was required to conduct an evidentiary hearing and to base its ultimate decision on the evidence adduced at that hearing. KRS 403.730(1)(a). As we have explained, "[b]ecause of the immense impact EPOs and DVOs have on individuals and family life, the court is mandated to provide a full hearing to each party." *Wright v. Wright*, 181 S.W.3d 49, 53 (Ky. App. 2005). Where a family court fails to do so, we are compelled to vacate the dismissal and remand for a full evidentiary hearing as contemplated by the statute. *Tipan v. Tipan*, 582 S.W.3d 70, 72 (Ky. App. 2019); *Lankford v. Lankford*, 688 S.W.3d 536, 540 (Ky. App. 2024).

A fundamental hallmark of due process is that each party receives a meaningful opportunity to be heard. *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky. App. 1987). That opportunity includes the right to present evidence and to give sworn testimony. *Wright*, 181 S.W.3d at 53; *Hawkins v. Jones*, 555 S.W.3d 459, 462 (Ky. App. 2018). A DVO hearing need not be lengthy; it must be full. *Rankin*

*v. Criswell*, 277 S.W.3d 621, 623–25 (Ky. App. 2008). This case presents not merely an abbreviated hearing, but a complete absence of one. The family court dissolved the emergency protective order and dismissed the petition without receiving any sworn testimony or evidence from either party.

We recognize the practical realities of family court practice, including the "one family, one judge" model and the extraordinary demands placed on family court dockets. We also do not ascribe any malintent to the family court here. Based on its prior experience with this family, the court was plainly attempting to reach an efficient and just result. Nevertheless, our case law makes clear that a family court may not deny a domestic violence petition based on matters drawn from other pending or prior cases that are not made part of the DVO record, nor may it substitute proceedings in another action for the statutorily required DVO hearing.

In *Rankin v. Criswell*, we held that a family court erred when it relied on information contained in dependency files from other proceedings—files that were neither admitted into evidence nor disclosed to the parties—to resolve a DVO petition without a full evidentiary hearing. 277 S.W.3d at 623–26. We emphasized that while a petition may support entry of an emergency protective order, a DVO "cannot be granted—or denied—solely on the basis of the petition or extrajudicial

-10-

information," and that a court's familiarity with the parties from other cases cannot substitute for evidence properly presented in the DVO proceeding. *Id.* at 625–26.

Domestic violence proceedings and custody proceedings serve distinct purposes and follow different procedural paths. DVO proceedings are intentionally streamlined and expedited to provide parties with prompt protection where domestic violence and abuse are alleged. Custody proceedings, by contrast, are often more deliberative and may unfold over a longer period. The existence of a recent custody hearing, however comprehensive, does not obviate the family court's obligation to conduct an evidentiary hearing under KRS 403.730 once an emergency protective order has been entered. The two proceedings are not mutually exclusive, and one cannot serve as a substitute for the other.

The family court's failure to permit Allen to present testimony, call witnesses, or introduce evidence denied her a meaningful opportunity to be heard and therefore violated due process as well as KRS 403.730. *Wright*, 181 S.W.3d at 53. Because due process must prevail, we vacate the family court's March 6, 2025, order dismissing Allen's petition for a domestic violence order and remand the matter for a full evidentiary hearing.

We emphasize the limited nature of our holding. We do not direct the family court to enter a domestic violence order, nor do we compel the court to permit Child to testify. Those determinations remain within the family court's

-11-

sound discretion.  Our holding is simply that once the family court determined the petition was sufficient to warrant entry of an emergency protective order, it was obligated to conduct an actual evidentiary hearing at which Allen was afforded a meaningful opportunity to present her case.

On remand, the burden rests with Allen, as the petitioner, to secure her evidence and witnesses and to ensure their availability at the hearing.  At the same time, if the family court determines that completion of a forensic interview or related investigation is necessary before proceeding, it retains discretion to extend the emergency protective order and continue the DVO hearing for good cause. Such a continuance does not offend the statutory framework and may serve its purpose by allowing the court to reach an informed decision based on adequate evidence.  *Guenther v. Guenther*, 379 S.W.3d 796, 801 (Ky. App. 2012).

Finally, to the extent the family court expressed concern regarding Child's ability or suitability to testify, we note that a child witness is presumed competent, and the burden of proving incompetence rests with the party asserting it.  *Price v. Commonwealth*, 31 S.W.3d 885, 891 (Ky. 2000).  The determination of competency lies within the sound discretion of the trial court and requires an independent assessment of whether the child is capable of observing, recollecting, and narrating events and understands the obligation to speak the truth.  *Pendleton v. Commonwealth*, 83 S.W.3d 522, 525–26 (Ky. 2002); *Howard v. Commonwealth*,

318 S.W.3d 607, 612 (Ky. App. 2010). While the GAL may offer *argument* on this issue, that advocacy cannot substitute for the court's own findings and conclusions, nor may the court abdicate its role by deferring entirely to the GAL's position.

Lastly, we briefly address Allen's arguments regarding the removal of Child's GAL and the family court judge.

First, we decline to consider Allen's claim that Child's GAL, Attorney Pashens Fitzpatrick, is biased and should be removed. That issue was raised and addressed in the parties' ongoing custody and parenting-time action, Jefferson Circuit Court, Family Division, No. 21-CI-503464, not as part of the protective order proceeding presently before us. The record contains a temporary order from that custody case reflecting that Allen moved to remove Attorney Fitzpatrick on grounds of alleged bias in favor of Newton. After questioning the GAL, the family court concluded there was no basis for removal. Allen represents in her appellate brief that she filed additional materials in this record after filing her notice of appeal; however, those materials are not part of the record before us. In any event, we will not address matters that were not decided by the family court as part of this action.

Similarly, Allen's request for recusal of the family court judge is not properly before us. While Allen states that she has sought recusal in other actions,

there is no indication that Allen sought recusal during these proceedings. As a result, there is no ruling on judicial disqualification for us to review.

Moreover, we decline to engage in fact-finding to determine, in the first instance, whether the family court judge was biased or should have recused. "As an appellate court, we review judgments; we do not make them. In this Commonwealth, it is axiomatic that appellate courts are not fact-finders." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014) (internal quotation marks and citation omitted). *See also Diaz v. Barker*, 254 S.W.3d 835, 838 (Ky. App. 2008) (recognizing the two statutory avenues for seeking judicial removal under KRS 26A.015 and KRS 26A.020). We express no opinion on whether Allen could obtain relief under those statutes should she elect to pursue them in the future.

## IV. CONCLUSION

For the foregoing reasons, we vacate the Jefferson Family Court's order dismissing Allen's petition for a domestic violence order, reinstate the emergency protective order, and remand this matter for the family court to conduct a full evidentiary hearing in accordance with KRS 403.730.

COMBS, JUDGE, CONCURS.

KAREM, JUDGE, DISSENTS AND FILES A SEPARATE OPINION.

KAREM, JUDGE, DISSENTING: Respectfully, I dissent. I understand the majority's desire to be cautious in a case alleging violence against a child;

-14-

however, I believe remanding the case for the trial court to attempt to hold a hearing is misguided and contrary to the applicable law.

In the case at bar, Allen filed a petition pursuant to KRS 403.725(1)(b) for an order of protection on behalf of her minor child. Notably, she did not include herself in the request. The petition alleged incidents of domestic violence against Child, which Allen did not witness and to which she could not testify. Child is clearly the sole party in interest in the DVO action.[5]

As mandated by law, before the hearing the trial court appointed a GAL to represent Child. The seminal case on GALs and their responsibilities is *Smith v. Doe*, 627 S.W.3d 903 (Ky. 2021). The *Smith* Court stated that "[t]he GAL is the child's agent and is responsible . . . for making motions, for introducing evidence, and for advancing evidence-based arguments on the child's behalf." *Id*. at 915. It is under that authority that Child's GAL made a motion to dismiss the petition and indicated she did not want Child to testify.

The legal process for petitioning the court for a protective order is a civil action unique to Family Court and to trial courts acting in that capacity. "A DVO proceeding is a civil matter that requires that the court find from 'a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur[.]' KRS 403.750(1)." *Rankin v. Criswell*, 277

---

[5] It is notable that Child's GAL chose not to file a brief in this appeal.

S.W.3d 621, 624 (Ky. App. 2008). *See also* 25 AM. JUR. 2D, Domestic Abuse and Violence § 20 (Nov. 2025). ("An action for a domestic violence protection order is a civil action primarily for injunctive relief[] and is summary in nature, seeking to quickly and effectively combat volatile situations before any tragic escalation."). However, the process does not follow the recognizable flow of civil litigation which includes a complaint, an answer, and subsequent discovery among other filings. But, as a civil action, CR[6] 41, pertaining to dismissal of actions, applies.

The Child's GAL was well within her authority to motion the court to dismiss the petition pursuant to CR 41.01(1), which states:

> **(1) By plaintiff; by stipulation**.
>
> Subject to the provisions of Rule 23.05, of Rule 66, and of any statute, an action, or any claim therein, may be dismissed by the plaintiff without order of court, by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of this state, of the United States or of any state an action based on or including the same claim.

---

[6] Kentucky Rules of Civil Procedure.

As outlined above, DVO actions do not follow the stereotypical flow of filings of most civil cases. The respondent against whom a petition is filed does not file an answer or a motion for summary judgment. However, in the case *sub judice*, the GAL made the motion to dismiss prior to any testimony being given or evidence entered into the record. The GAL's motion to dismiss complied with the spirit of the law, and the trial court, therefore, was correct in dismissing the action. *See Whaley v. Whitaker Bank, Inc.*, 254 S.W.3d 825, 829 (Ky. App. 2008) (a CR 41.01(1) notice of dismissal is automatic, leaving no discretion to the trial court as to whether it should be granted.)

Moreover, Child was not present at the court date wherein the DVO hearing was to take place. Child's GAL indicated to the court that she did not want Child to testify. There is no reason to believe, especially given the GAL did not file a brief in this appeal, that the GAL will change her mind. Sending the case back to the trial court under these circumstances is a poor use of vital court resources. Thus, I would affirm the trial court as appropriately dismissing the DVO petition.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Evangeline Allen, *pro se*
Louisville, Kentucky