Nathan J. WRIGHT, Appellant,

v.

Jamie C. WRIGHT, Appellee.

and

Teresa Ann Fraley, Appellant,

v.

Troy Dennis Fraley, Appellee.

Nos. 2005–CA–000540–ME,
2005–CA–000657–ME.

Court of Appeals of Kentucky.

Dec. 9, 2005.

Vicki L. Ridgway, Pikeville, KY, for appellants in No. 2005–CA–000540–ME.

Virginia Meagher, Jackson, KY, for appellants in No. 2005–CA–000657–ME.

No Brief for appellee.

Jason S. Wilson, Richmond, KY, for appellee.

Before GUIDUGLI and HENRY, Judges; POTTER, Senior Judge.[1]

## OPINION

GUIDUGLI, Judge.

In this consolidated action, Nathan J. Wright has appealed from the three-year Domestic Violence Order (hereinafter "DVO") entered by the Floyd Family Court on February 9, 2005, while Teresa Fraley has appealed from the Lee Circuit Court's February 18, 2005, dismissal of her Emergency Protection Order (hereinafter "EPO"). Both appellants assert that they were denied a full hearing, to which they claim to be statutorily entitled. Because we agree that neither the Floyd Family Court nor the Lee Circuit Court afforded either appellant a full hearing, we vacate both orders, and remand the matters to the respective courts for further proceedings.

*APPEAL NO. 2005–CA–000540–ME*

On February 3, 2005, Jamie Wright, who had initiated a dissolution action the preceding July, filed a Domestic Violence Petition/Motion in the Floyd Family Court, alleging that her husband, Nathan, had engaged in an act or acts of domestic violence and abuse on February 1, 2005.[2]

---

1. Senior Judge John W. Potter, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. While the petition lists the date as February 1, 2004, and the witness to the petition indicated that the form was subscribed and sworn to on February 3, 2004, we believe that the year should have been listed as 2005.

Jamie's factual statement reads as follows: [3]

A brief dispute occurred, and Nathan was very angry. He made some comments that made me realize he was not in a safe state of mind for the children and I to be around. I phoned a friend to inform her of the situation. She phoned KSP to let them know I was vacating the home with the children. I was afraid that if they weren't informed, he would have kept me from getting the children out of the home. The KSP met with me, and noticed a place on my eye where I had ran into the refridgerator earlier that day. They would not accept that being the reason for the bruises on my face. They took further action, and arrested him. I am now afraid that he will become more furious with me, thinking I had him arrested, and try to somehow harm me (or) take our son from me. He is not in a safe state of mind, and I'm afraid that he will react to this ordeal without thinking the situation through.

The family court entered an Emergency Order of Protection and Summons the same day, restrained Nathan from committing further acts of abuse or threats of abuse and from any contact or communication with Jamie, and ordered Nathan to remain 1,000 feet away from Jamie and her family. A hearing was scheduled for February 9, but the family court did not hold a hearing that day. Rather, the family court heard arguments from counsel for the parties, and indicated on the record that it was aware of a 911 call and the involvement of law enforcement, as well as that a child had been removed in Johnson County because of this altercation.[4] Counsel also indicated that the entry of an agreed restraining order in conjunction with the dissolution proceeding had been discussed. Furthermore, counsel for Jamie appeared to state that Jamie did not want to restrain Nathan, but was interested in seeking counseling. However, the family court specifically stated on the record:

Considering that this domestic violence altercation led to the involvement of law enforcement, apparently there was a 911 call that I am getting a transcript of. Considering that that led to removal of your child in Johnson County, there's no way that I'm not going to enter a DVO.

The family court also ordered the Cabinet to investigate the matter and put in place a safety plan. Finding in the written order that Jamie had established by a preponderance of the evidence that an act of domestic violence or abuse had occurred and might occur again, the family court entered a DVO, which would be effective for three years until February 9, 2008. Nathan was ordered to remain 500 feet away from Jamie and members of her family, and was referred to offender counseling. Nathan timely filed a notice of appeal from the DVO.

In his brief, Nathan argues that the family court did not hold a hearing prior to entering the DVO, in violation of KRS 403.740 and 403.745, and made its decision based on its knowledge or belief of events occurring outside of the record. Jamie did not file a responsive brief.

*APPEAL NO. 2005–CA–000657–ME*

On February 4, 2005, Teresa filed a Domestic Violence Petition/Motion with the Lee District Court, alleging that her

---

3. Spelling and grammatical errors have not been corrected.

4. Counsel for Jamie stated that a child from a previous relationship was declared dependent and removed from Jamie by the Johnson District Court because she and Nathan had reconciled without having received any counseling or professional help.

husband, Tory Dennis Fraley, had engaged in domestic violence on or about January 31, 2005. At Teresa's request, a 911 dispatcher completed the petition, including the factual statement, which reads as follows: [5]

> [Teresa] advised that [Troy] has physically abused her in the past and that she fears it will occur again. Advised that he verbally abused her in the presence of her son stating "He would be able to get to her before anyone else could, and that he was going to put her out of her misery." "He would kill her." Stating several ways in which he would kill her. Approx 8 years [Troy] caused physical injury to [Teresa] to the extent in which medical treatment was required. She was treated at KRMC, all records of this can be obtained there. Requests that [Troy] have no contact with her at all. Advised that the verbal and mental abuse occurred daily and that she has received medical treatment from JB Noble a dr in Lee Co. in reference to this.

The district court entered an Emergency Order of Protection and Summons, transferred the matter to the Lee Circuit Court in contemplation of the to-be-filed dissolution action, and scheduled a hearing for February 18.

At the hearing, the circuit court examined Teresa as follows:

Q. Tell me what happened.

A. The night I left?

Q. Yes.

A. This has been an ongoing situation.

MS. MEAGHER: I'd like for her to identify herself for the record.

Q. State your name for the record.

A. Teresa Fraley.

Q. Tell me what happened.

A. The night I went in we had words, and I just felt it was the right thing to do. It was getting very dangerous. I decided I was going to leave.

Q. You'll have to tell me more than that. Were you threatened in any way?

A. No, he did not threaten me.

Q. Did he touch you that night?

A. No, he did not touch me. It has happened in the past. Since I just felt like he was dangerous—

Q. He didn't threaten you that night?

A. No.

THE COURT: The EPO is dismissed.

MS. MEAGHER: Your Honor, I'd like to ask some questions.

THE COURT: You can ask them, but from what she says—

EXAMINATION

BY MS. MEAGHER:

Q. Has he been violent with you before?

A. Yes.

Q. When was he violent?

A. Eight years ago. I had to go to the hospital.

Q. Did you tell the doctor what happened?

A. Yes.

Q. What had—

THE COURT: I'm not going back eight years for the record. It's dismissed.

The circuit court entered a bench order that day dismissing the EPO, finding that no violence had been alleged. It is from this order that Teresa has taken her appeal.

In her brief, Teresa argues that she was denied a full hearing on her petition, in violation of KRS 403.740, and was thereby deprived of her due process rights. In

5. Spelling and grammatical errors have not  been corrected.

response, Troy argues that Teresa in fact received a full hearing, but failed to prove that any domestic violence or abuse occurred.

*DISCUSSION*

The General Assembly enacted KRS 403.715 to 403.785 as a means to allow victims of domestic violence and abuse "to obtain effective, short-term protection against further violence and abuse in order that their lives will be as secure and as uninterrupted as possible[,]"[6] among other reasons. KRS 403.720(1) defines "domestic violence and abuse" as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" Upon review of a petition filed pursuant to KRS 403.725 and 403.730, the court may enter an EPO if it determines that the allegations "indicate the presence of an immediate and present danger of domestic violence and abuse[.]"[7] An EPO can be effective for no more than fourteen days, and "[u]pon the issuance of an [EPO], a date for a full hearing, as provided for in KRS 403.745, shall be fixed not later than the expiration date of the [EPO]." KRS 403.745 provides for the issuance of a summons to the adverse for a hearing. Finally, KRS 403.750(1) permits a court to enter a DVO if, following the hearing, the court "finds from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur . . . ." In *Commonwealth v. Anderson*,[8] the Supreme Court of Kentucky defined the preponderance standard as requiring that the evidence be sufficient to establish that the alleged victim "was more likely than not to have been a victim of domestic violence."

The filing of a DVO petition has enormous significance to the parties involved. If granted, it may afford the victim protection from physical, emotional, and psychological injury, as well as from sexual abuse or even death. It may further provide the victim an opportunity to move forward in establishing a new life away from an abusive relationship. In many cases, it provides a victim with a court order determining custody, visitation and child support, which he or she might not otherwise be able to obtain. The full impact of EPOs and DVOs are not always immediately seen, but the protection and hope they provide can have lasting effects on the victim and his or her family.

On the other hand, the impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator. To have the legal system manipulated in order to "win" the first battle of a divorce, custody, or criminal proceeding, or in order to get "one-up" on the other party is just as offensive as domestic violence itself. From the prospect of an individual improperly accused of such behavior, the fairness, justice, impartiality, and equality promised by our judicial system is destroyed. In addition, there are severe consequences, such as the immediate loss of one's children, home, financial resources, employment, and dignity. Further, one becomes subject to immediate arrest, imprisonment, and incarceration for up to one year for the violation of a court order, no matter what the situation or circumstances might be.

Balancing these conflicting interests is an awesome responsibility. Trial courts

---

6. KRS 403.715(1).

7. KRS 403.740(1).

8. 934 S.W.2d 276, 278 (Ky.1996).

are often overwhelmed with such cases along with numerous other cases and duties that must be attended to in order to keep the dockets moving and up to date. Yet because of the immense impact EPOs and DVOs have on individuals and family life, the court is mandated to provide a full hearing to each party. To do otherwise is a disservice to the law, the individuals before the court, and the community the judges are entrusted to protect. While we realize the tremendous responsibility entrusted to the trial judges in these cases, we also realize the awesome impact each case has and, as such, must insist that a full evidentiary hearing be afforded to the parties as provided for by the statutes and court rules.

In the present cases, the appellants have argued that the respective courts did not hold a full hearing as required by the statute. We agree. In *Lynch v. Lynch*,[9] the Kentucky Court of Appeals made it clear that "[d]ue process requires, at the minimum, that each party be given a meaningful opportunity to be heard." In Nathan's case, the family court asked no questions of either party, and impermissibly relied upon extrajudicial evidence in entering the DVO.[10] In Teresa's case, the circuit court conducted what can best be described as a minimal hearing, essentially asking Teresa two questions before dismissing the EPO. We have no way to determine what Teresa's counsel was seeking to elicit regarding the past incident and how that impacted upon her present situation because the court would not allow any more questions. Clearly, in neither case may we hold that the court held a "full hearing" as contemplated by the statute, as there was no testimony, sworn or otherwise, allowed in one, while in the other case counsel was not permitted to complete Teresa's direct examination before the court announced its decision. As such, neither court could have made a finding based upon a preponderance of the evidence.

Because there was either no evidence or insufficient evidence presented to meet the applicable standard or proof, we must vacate both rulings before us and remand the matters for a "full hearing" as contemplated by the statute, comprised of the full testimony of any appropriate witnesses sought to be presented.

For the foregoing reasons, the DVO entered by the Floyd Family Court in appeal No. 2005–CA–000540–ME and the order dismissing the EPO entered by the Lee Circuit Court in appeal No. 2005–CA–000657–ME are both vacated, and the matters are remanded to their respective courts for further proceedings in accordance with this opinion.

ALL CONCUR.

---

**9.** 737 S.W.2d 184, 186 (Ky.App.1987).

**10.** *See Id.*