RENDERED: FEBRUARY 24, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2022-CA-0376-ME

JESSICA ALLGEIER                      APPELLANT


|  | APPEAL FROM JEFFERSON FAMILY COURT |
|---|---|
| v. | HONORABLE LAUREN ADAMS OGDEN, JUDGE |
|  | ACTION NO. 14-D-502538-003 |


JEFFREY WAGNER                       APPELLEE


AND

NO. 2022-CA-0377-ME

JESSICA ALLGEIER                       APPELLANT


|  | APPEAL FROM JEFFERSON FAMILY COURT |
|---|---|
| v. | HONORABLE LAUREN ADAMS OGDEN, JUDGE |
|  | ACTION NO. 22-D-500481-001 |


JEFFREY WAGNER                       APPELLEE

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND EASTON, JUDGES.

DIXON, JUDGE:  Jessica Allgeier appeals the orders of the Jefferson Family Court, entered March 1, 2022, dismissing her petition for a domestic violence order (DVO) against Jeffrey Wagner and granting a DVO against her on behalf of their two minor children.  After careful review of Jessica's brief, the record, and the law, we affirm in part, reverse in part, and remand.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Jessica and Jeffrey were previously married and have two children in common, of whom Jeffrey presently has custody.  The parties have a lengthy history with the Jefferson Family Court, including an ongoing custody action and multiple prior DVO and dependency, neglect, and abuse (DNA) cases.

Following an incident during her visitation with the children on February 16, 2022, Jessica filed a petition for a DVO against Jeffrey for herself and indicated "TBD" regarding whether protection was similarly requested for the children.  Jefferson Family Court Action Number 22-D-500481-001.  Jeffrey subsequently filed a DVO petition to protect the children from Jessica.  Jefferson Family Court Action Number 14-D-502538-003.  On March 1, 2022, after a

consolidated hearing, the court dismissed Jessica's petition and entered a DVO restraining Jessica from having unlawful contact with the children. This consolidated appeal timely followed. We will introduce additional facts as they become relevant.

## LEGAL ANALYSIS

Jessica first argues that the court violated her right to a full evidentiary hearing when, in the middle of her direct examination, the court opined that her complaint was custodial in nature, immediately directed its attention to Jeffrey's petition, and then denied her subsequent request to present additional evidence.

Upon the filing of a DVO petition, due process requires that the court provide a full hearing to each party. *Wright v. Wright*, 181 S.W.3d 49, 53 (Ky. App. 2005). At minimum, this requires "'that each party be given a meaningful opportunity to be heard.'" *Id.* (quoting *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky. App. 1987)). Accordingly, we must review the events of the hearing.

Jessica's recounting of the proceeding, while not inaccurate, is incomplete. Both parties were present and represented by counsel. At the start of the one-hour consolidated hearing, the court read Jessica's petition into the record and she adopted its contents. Per the petition, after encouraging their 12-year-old daughter to run away from Jessica's home, Jeffrey drove onto her property, picked up their daughter in an unknown vehicle, and left without notifying Jessica.

-3-

Fearing the child had been abducted, Jessica pursued in her own vehicle while calling 911. Jessica characterized the event as a high-speed chase which ended only after six police cars blocked the road.

Jessica's petition additionally detailed the family's tumultuous history, which included specific allegations that Jeffrey: abducted their son in 2013; was the subject of a prior EPO in 2014, which was reduced to a no contact order; and threatened her in 2017 by saying "watch your chops, someone wants a piece of your ass in the parking lot." Jessica also claimed that since 2013, Jeffrey has repeatedly disparaged her, encouraged the children to run away from her, and made false accusations against her. As a result, the children have been removed from her care multiple times, even though there was no injury or imminent danger. There have been more than 30 calls to Child Protective Services (CPS).

After adopting her petition, Jessica testified that the February 16 incident was extremely scary and threatening to herself and her family. Despite instructions from the court to focus on the events of February 16, Jessica's remaining testimony was that she is a victim of domestic violence, she has participated in therapy for seven years, and she has been diagnosed with situational post-traumatic stress disorder. In support, Jessica introduced two letters from her therapist, the most recent of which was dated February 2020, and attempted to

enter into evidence the narrative from police reports concerning prior incidents; Jeffrey objected on the basis of hearsay.

At this point in the proceedings, the court stated, "I'm trying to give some leeway here. I really don't think this is a domestic violence case. I really think this is a custody issue once again." The court further noted that Jessica's recounting was inconsistent with prior orders and findings of the court and that the court would take judicial notice of those historical records. In response, Jessica argued that she was the victim of emotional and litigation abuse and that Jeffrey should not be permitted to enter her property uninvited and in contravention of an agreed no contact order without repercussions. After vigorous debate about these claims, counsel asserted that Jessica had been placed at gunpoint and requested that the court read Jeffrey's petition. The court did as entreated,[1] and then, without objection, Jeffrey was questioned by his and Jessica's counsel for approximately 27 minutes.

Jeffrey testified that their daughter called him, hysterical and afraid, so he contacted 911, had his father drive him (in the vehicle routinely used during custody exchanges) to the street fronting Jessica's house, and retrieved the child. Jeffrey did not notify Jessica of these events, but he did update 911 that he had the

---

[1] We note that the petitions were silent as to firearms, and the only evidence introduced on the subject was Jeffrey's testimony that he did not see any firearms during the police stop.

-5-

child and reported that they were being followed by Jessica.  After initiating a traffic stop, officers spoke with the parties, their daughter, and the children's guardian *ad litem* (GAL) before permitting Jeffrey to take the child home.  Jeffrey denied entering Jessica's property, encouraging the child to run away, or driving in an unsafe manner, though he admits he was not the driver and did not look at the speedometer.  Beyond the events of February 16, Jeffrey informed the court that a report was made to CPS on January 1, 2022, regarding a bruise and scratches on the face and neck of the parties' son.

On cross-examination, Jeffrey admitted that during a conversation regarding the extent of their son's injuries, he told Jessica, "That is the [expletive] attorney exaggerating, that is what he gets paid to [expletive] do[;]" though he denied ever lying to the court or bribing his attorney.  Jeffrey also admitted that five years prior, after Jessica "stole" their daughter, he essentially advised her that she should not attend an upcoming event because his family was angry, but he denied saying someone would be waiting for Jessica in the parking lot.

At the conclusion of Jeffrey's testimony, Jessica reiterated that she needed assurance that he could not come onto her property or within 500 feet of her.  After soliciting an opinion from the GAL, the court announced Jessica had failed to meet her burden of proof, and her petition was dismissed.  Only then did

Jessica request the opportunity to present additional testimony. The court denied her request and granted Jeffrey's petition.

Considering these events, we cannot say that Jessica was deprived of a meaningful opportunity to be heard. While it may be true her direct examination was curtailed, the shift in focus was the direct result of Jessica imploring the court to consider Jeffrey's petition, instead of Jessica merely testifying to the facts she wished to introduce. Further, at no point before the court announced its determination did Jessica attempt to introduce additional testimony. She raised no objection to the immediate commencement of Jeffrey's direct examination, and again, failed to object when the court signaled the close of evidence. Under these facts, we find no error.

Next, Jessica contends the court erred by dismissing her petition. A court may grant a DVO if, following a hearing, it "finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS[2] 403.740(1). Domestic violence and abuse is defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse,

---

[2] Kentucky Revised Statutes.

-7-

strangulation, or assault between family members[.]" KRS 403.720(1).[3] The preponderance standard is satisfied if the evidence establishes that the person to be protected "was more likely than not to have been a victim of domestic violence." *Hall v. Smith*, 599 S.W.3d 451, 454 (Ky. App. 2020). On appeal, we accept the trial court's factual findings, unless clearly erroneous, and we review the court's determination to grant or deny the DVO for an abuse of discretion. *Id.*; *Holt v. Holt*, 458 S.W.3d 806, 812 (Ky. App. 2015).

The essence of Jessica's claim is encapsulated by her misstatement of the applicable standard where she asserts that "merely being in fear of injury and harassment is sufficient for a finding of domestic violence." Though Jessica testified generally that the events of February 16 were scary and threatening given the parties' history, her claims of emotional or litigation abuse and trespass do not support a finding that she or the children suffered an enumerated injury or the necessary imminent fear of such a harm. Under these facts, we conclude the court did not abuse its discretion in dismissing the petition.

We turn now to whether the court abused its discretion in granting Jeffrey's DVO petition, as Jessica argues there was no evidence that he or the

---

[3] Our citation is to the version of KRS 403.720 in effect during the underlying proceedings. *See* 2021 Ky. Acts ch. 175, § 4 (eff. Apr. 1, 2021). The statute was later amended to expand the definition of domestic violence and abuse; however, the cited portion remains unchanged. *See* 2022 Ky. Acts ch. 158, § 1 (eff. Jul. 14, 2022).

children were victims of domestic violence or abuse. As an initial matter, the order on appeal clearly establishes that the only parties protected therein are the children, not Jeffrey. Accordingly, any argument pertaining to him is moot. As to the children, in granting the DVO the court found: (1) in January 2022, CPS was actively involved due to bruises and scratches on the parties' son, (2) their daughter was hysterical after running away from Jessica's home on February 16, 2022, and (3) Jessica had previously been found to have abused the children in prior DNA actions.

Again, domestic violence and abuse is defined as "[p]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members[.]" KRS 403.720(1). Here, though the evidence demonstrates that the parties' son incurred a physical injury – satisfying the initial requirement of this definition – the record is devoid of any evidence, competent or otherwise, as to the cause of the harm or even whether Jessica had access to the child since she is restricted to limited visitation. Similarly, while the daughter's agitated demeanor and flight from Jessica's home

is certainly a cause for concern, there was no competent evidence that she incurred the requisite harm or that she was in fear thereof.[4]

Accordingly, the court had to infer the missing elements solely from the fact Jessica was found to have abused the children previously. However, this runs afoul of the general rule that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." KRE[5] 404(b). While KRE 404(b)(1) does recognize an exception for proving identity, there is no evidence that the prior abuse and the current injury are "simultaneously similar and so peculiar or distinct . . . that they almost assuredly were committed by the same person." *Woodlee v. Commonwealth*, 306 S.W.3d 461, 464 (Ky. 2010) (citations and emphasis omitted). As there is insufficient evidence that either child was the victim of domestic violence or abuse, the court abused its discretion in granting the DVO.

---

[4] We acknowledge that Jeffrey's petition and testimony did contain hearsay statements, to which there was no objection, that may support a finding of domestic violence; however, the court properly disregarded this incompetent evidence. Likewise, we do not consider it on appeal. *G.E.Y. v. Cabinet for Human Res.*, 701 S.W.2d 713, 715 (Ky. App. 1985) ("We agree when a judge acts as a fact finder it is presumed that he will be able to disregard hearsay statements. However, where . . . it is apparent that he relied on the hearsay in making his decision, the error in the admission of the unreliable evidence cannot be deemed harmless or nonprejudicial."); s*ee also Allen v. Gueltzow*, 535 S.W.3d 333, 335 (Ky. App. 2017).

[5] Kentucky Rules of Evidence.

Finally, given the preceding holdings, we need not reach the merits of Jessica's remaining arguments that the court erred in taking judicial notice of its prior findings and orders and rendering insufficient findings of fact.

**CONCLUSION**

Therefore, and for the foregoing reasons, the judgment of the Jefferson Family Court in No. 2022-CA-0376-ME is REVERSED and REMANDED for dismissal of the DVO and the judgment in No. 2022-CA-0377-ME is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:                  NO BRIEF FOR APPELLEE.

Kaitlin Smith Dean
Louisville, Kentucky