RENDERED:  DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0363-ME

ASHLEY NICOLE HILD                                        APPELLANT

v.
APPEAL FROM OLDHAM CIRCUIT COURT
HONORABLE DOREEN S. GOODWIN, JUDGE
ACTION NO. 24-D-00009-001

RICHARD WILLIAM HILD                                   APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  Appellant Ashley Hild ("Ashley") appeals from a Domestic Violence Order ("DVO") entered by the Oldham Circuit Court in favor of her brother, Appellee Richard Hild ("Richard").  After careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Richard and Ashley are siblings who lived at the same residence ("the New Cut property"), which was owned by Ashley.  (Video Record ("V.R.") Feb. 16, 2024 Hearing – 12:07:45.)  The parties have had a complicated and tumultuous

relationship over the years, both alleging past instances of assault against the other.[1]  The parties also had a unique financial situation.  For multiple years before the filing of the DVO petition, Ashley had been giving Richard disbursements of $1,000 a month from the inheritance she received from the parties' mother.[2]  On February 1, 2024, Richard filed a petition for a DVO after an incident that occurred on January 29, 2024.  The petition alleged as follows:

> On the 29th Ashley was arrested by the Oldham County police.  She was taken to jail on charges of 1st degree strangulation, 3rd degree Terroristic Threatening and 2nd degree menacing.[3]  She has repeatedly done these things to me and attacked me.  She was ordered to have no contact with me and today 2-1-24 she was at the house and did not want to leave until the police made her.  She is a mean and violent drunk who drinks 30-40 beers a day.  I am in fear of her and she threatened to have me merked.[4]  Which I have since been told that it means

---

[1] Richard testified that he has called police multiple times on Ashley, though she was never arrested until the January 29, 2024 incident.  There was also an incident in 2022 in which Richard, and a cousin of the parties, were charged with assault against Ashley, though the charges against Richard were ultimately dropped.  (V.R. Feb. 16, 2024, Hearing – 12:14:00.)

[2] Ashley testified that she received the bulk of their mother's assets and the New Cut property, because of concerns with Richard's previous felony conviction of fraud in 2009 and monies he owed to the federal government as a result.  (V.R. Feb. 16, 2024, Hearing – 12:56:30.)

[3] Those proceedings appear to be ongoing.  Oldham County Case No. 24-F-00049.  Information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings.  *See*, *e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020).

[4] According to the Urban Dictionary, "merc" is a slang term derived from the word mercenary and generally means "to perpetuate violence, usually killing, but can just mean to beat someone up."  https://www.urbandictionary.com/define.php?term=Merc (last visited on November 7, 2024).  This term has multiple spellings, but for the purposes of this Opinion, we shall use "merked" as it is spelled in Richard's petition.

killed. I am afraid of her and her guy friends that she threatens to have them come out here to the house and hurt me.

(Record ("R.") at 5.) After reviewing the petition, the circuit court entered an emergency protective order ("EPO") and issued summons for a hearing. (R. at 1-3.) The EPO ordered that Ashley vacate the New Cut property.

On February 16, 2024, the circuit court conducted a hearing; both parties appeared. Appellant proceeded with counsel and Appellee proceeded *pro se*. The circuit court began by reading the allegations of the petition aloud. Richard verified the contents of the petition and further testified that the parties got into an argument about a paramour of Ashley's after she became drunk and that she had strangled him, leaving marks on his neck. (V.R. Feb. 16, 2024, Hearing – 12:08:40.) He admitted to not seeking medical treatment after the incident and did not have pictures of the injury. He further testified that he had not subpoenaed a police officer who was present on the scene to appear as a witness at the hearing. *Id.* He acknowledged that both parties had been drinking alcohol the night of the incident. Richard admitted to helping post bond for Ashley after she was arrested for the January 29, 2024 incident, though he did so with the understanding that a condition of the bond was that she would not be present at the property if Richard was there. On February 1, 2024, Ashley and Cory, a mutual friend of the parties,

-3-

came to the property for Ashley to retrieve some property, but police were called when she did not leave. Richard filed the DVO petition afterward.

Ashley testified that Richard filed the DVO petition because of the frustrations surrounding the parties' financial relationship and his desire to have her removed from the New Cut property, not because he was actually afraid of her. She claimed the argument on January 29, 2024, concerned Ashley's expressed intention to end the $1,000 payments to Richard in February 2024. Ashley denied strangling Richard but admitted to pushing him away at some point during the argument after he had charged at her. She also admitted to stating that she would have Richard "merked," but claimed she was not sure of its meaning when she said it. (V.R. Feb. 16, 2024, Hearing – 12:59:30.) The parties agreed during the hearing that they both now understood the term to mean to have someone murdered. Ashley also called the parties' friend, Cory, as a witness. Cory testified that Ashley had called him on the night of the January 29, 2024, incident to come and pick up Richard. He further testified that he noticed a scratch on Richard's neck when he arrived, but that was the only injury he saw. His understanding was that the argument between the parties concerned Ashley's not letting Richard get into the refrigerator for something. He also heard Ashley exclaim that she would get Richard "merked." (V.R. Feb. 16, 2024, Hearing – 1:20:05.)

At the conclusion of the hearing the circuit court found by a preponderance of the evidence that an act of domestic violence and abuse occurred and may again occur. In orally stating its findings the circuit court said that, while there was no proof of a physical injury occurring, the evidence supports the allegation that Ashley assaulted Richard and, in the presence of police officers, threatened to have him killed. The circuit court concluded that there were credibility issues surrounding both parties, but after weighing the evidence, it was appropriate to enter a DVO to last for one year, subject to modification pending the outcome of a forcible detainer action which Ashley had filed against Richard. (V.R. Feb. 16, 2024, Hearing – 1:44:00.) The circuit court entered a standard Administrative Office of the Courts ("AOC") Form 275.3 order of protection for entry of a DVO. The "Additional Findings" section reads as follows:

> For Petitioner against Respondent in that it was established, by a preponderance of the evidence, that an act(s) of ☒ domestic violence and abuse, ☐ dating violence and abuse, ☐ stalking, ☐ sexual assault has occurred and may again occur[.]

(R. at 19.) Nothing was written in the portion concerning supplemental findings. However, a later portion of the order stated: "[i]n order to assist in eliminating future acts of domestic violence and abuse, dating violence and abuse, stalking or sexual assault **[t]he court's oral findings are incorporated herein the same as if copied.**" (R. at 21.) (Emphasis added for portions written in by the circuit court.)

On March 7, 2024, Ashley filed a motion to alter and amend the DVO under CR[5] 59 to allow her to access the New Cut property, the basis being that the Oldham District Court ruled in her favor in the parties' forcible detainer action. (R. at 30.) Ashley also filed the instant appeal of the DVO. Because of the pending CR 59 motion, this Court ordered that the appeal be held in abeyance until the circuit court disposed of the motion. The circuit court subsequently granted the motion and amended the DVO to allow Ashley to return to the New Cut property. (R. at 36.) Thus, it is appropriate for this Court to now proceed.

On appeal, Ashley challenges the sufficiency of the circuit court's findings of fact in that its written findings were insufficient and unsupported by substantial evidence.

**STANDARD OF REVIEW**

This Court reviews the factual findings and entry of a DVO for clear error. *See* CR 52.01; *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010). A judgment is not clearly erroneous if it is supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted).

---

[5] Kentucky Rules of Civil Procedure.

# ANALYSIS

As an initial matter, we recognize that Richard did not file an Appellee's brief. This Court may impose penalties under RAP[6] 31(H); however, the decision to impose any penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Considering the serious nature of domestic violence actions, we decline to exercise any penalties in this instance. *See Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

Before delving into the sufficiency of the evidence itself, we will briefly address the sufficiency of written factual findings. A circuit court's duty to make findings of fact is not satisfied until its findings are reduced to writing. *Keifer v. Keifer*, 354 S.W.3d 123, 126 (Ky. 2011). For cases involving the entry of a protection order, notations on a docket sheet referring to oral findings alone are not sufficient. *Boone v. Boone*, 463 S.W.3d 767, 769 (Ky. App. 2015). However, a completely and accurately completed AOC Form 275.3 order, along with some kind of additional findings, is sufficient to satisfy the circuit court's good faith duty to record its findings. *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015) (holding that a complete and accurate AOC Form 275.3 with a box checked under the "Additional Findings" section along with factual findings made on a docket sheet is sufficient); *Smith v. McCoy*, 635 S.W.3d 811, 813-17 (Ky. 2021) (holding

---

[6] Kentucky Rules of Appellate Procedure.

that a complete and accurate AOC Form 275.3 with a box checked under the "Additional Findings" section along with a pre-typed regularly used Findings of Fact and Conclusions of Law form incorporating oral findings made on the record is sufficient); *Johnston v. Johnston*, 639 S.W.3d 428, 431-32 (Ky. App. 2021) (holding that a complete and accurate AOC Form 275.3 with a box checked under the "Additional Findings" section and along with language incorporating oral findings made on the record within the AOC Form 275.3 is sufficient); *cf. Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018) (holding that merely filling out an AOC Form 275.3 indicating that domestic violence existed but not making any additional findings on the form or otherwise is not sufficient); *see also Williford v. Williford*, 583 S.W.3d 424, 430 (Ky. App. 2019).

In this case, the circuit court filled out an AOC Form 275.3 order, marked a box under the "Additional Findings" section stating that an act of domestic violence or abuse occurred and may occur again, and incorporated its oral findings in the order. The circuit court's method of making its findings was functionally identical to that in *Johnston*. Thus, we conclude this was sufficient and permits this Court to engage in a meaningful appellate review of the sufficiency of the evidence itself.

Pursuant to KRS[7] 403.740, a circuit court may issue a DVO if, following a hearing conducted under KRS 403.730, it finds by "a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" The preponderance of the evidence in a case such as this occurs when the alleged victim was more likely than not to have been a victim. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007). Importantly, this Court has long held, "in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).

The phrase "domestic violence and abuse" is defined as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple." KRS 403.720(2)(a). "Physical injury" can mean any "substantial physical pain or any impairment of physical condition" or "[p]hysical damage to a person's body." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019) (citing KRS 500.080(13) and BLACK'S LAW DICTIONARY (11th ed. 2019)). The definition of "imminent" is "impending danger, and, in the context of domestic violence and

---

[7] Kentucky Revised Statutes.

-9-

abuse as defined by KRS 403.720, belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3); *Collett v. Dailey*, 371 S.W.3d 777, 779 (Ky. App. 2011). An infliction of fear of imminent physical injury can exist in cases where no physical injury occurred. *Hohman v. Dery*, 371 S.W.3d 780, 782-83 (Ky. App. 2012) (finding that an infliction of fear of imminent physical injury existed based on the petitioner's testimony that she felt threatened by the respondent's actions of clenching his fists, yelling, and gritting his teeth, that the respondent lacked self-control and the ability to control his emotions, and that she feared his behavior was going to escalate "to the next level").

In this case, the only evidence that a physical injury occurred was testimony from Cory about a scratch being on Richard's neck and Richard's testimony about Ashley strangling him. However, Richard also testified about Ashley's actions during the incident, stating that she had been drinking alcohol and was yelling at him, which Ashley did not deny. Crucially, it is undisputed that a physical altercation between the parties occurred, and that Ashley told Richard she would have him "merked." Ashley argues that this was not a reasonable threat because neither of the parties knew what the term meant when Ashley said it. However, while Richard admitted to not knowing what this term meant the instant Ashley said it, he found out shortly thereafter from police on the scene who overheard Ashley say it. Additionally, Ashley's only rebuttal on that issue was

-10-

that she was not sure of the term's meaning, thinking it might have meant "get out of my face." Even if Ashley was correct in her meaning of the term, drunkenly yelling at someone to "get out of my face," despite being in the presence of police officers, is similar to the actions of the respondent in *Hohman*. 371 S.W.3d at 782-83.

Often in cases such as these, evidence is submitted by both parties calling into question the credibility of the other; the circuit court is obliged to weigh all of the evidence in front of it and make a credibility determination.

> Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (footnotes and citations omitted).

In this case, the circuit court conducted a hearing and allowed the parties to fully present their cases, submit any appropriate evidence, and examine and cross-examine witnesses. Afterward, it weighed all the evidence presented and, in this instance, chose to believe Richard over Ashley. In doing so, we hold

the circuit court did not abuse its discretion, so we will not disturb its factual findings. *See Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982).

## **CONCLUSION**

Accordingly, because the circuit court did not abuse its discretion in entering the one-year DVO against Ashley, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

R. Zachary Meihaus
Louisville, Kentucky