RENDERED:  MAY 8, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1430-ME

NATHAN BROOKS                                                            APPELLANT

v.         APPEAL FROM KENTON CIRCUIT COURT
           HONORABLE THOMAS A. RAUF, JUDGE
           ACTION NO. 24-D-00391-001

C. J., A MINOR CHILD AND TRAVIS
JAMES                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Nathan Brooks ("Brooks") appeals from the Kenton Circuit Court's order cancelling a hearing regarding an alleged interpersonal protection order ("IPO") violation and denying Brooks' motion to amend the IPO from three (3) years to one (1) year.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2024, Travis James filed a petition for a Temporary Interpersonal Protective Order ("TIPO") against Brooks[1] on behalf of his minor daughter, C.J. At the time, C.J. was sixteen (16) years old and alleged the following happened on August 31, 2024[2]:

> I was at my friends house were nathan Brooks was not intoxicated and I was he took advantage of me were raped and he raped me consistally told him to stop and said no. he came on my stomache cleaned it up and Left me there while I puked and told my friend and his that I was sleeping. he kept telling me not to tell anyone and I told my parents I went to the hospital and called the cops, had a sane exam and a forenzic exam
>
> I would like to have an protective order because I am afraid of him because he did not respect me or my reapted no's

The trial court granted the TIPO, appointed a guardian *ad litem* ("GAL") to represent C.J., and scheduled a hearing on the matter for September 18, 2024.

On September 13, 2024, the trial court held a hearing on Brooks' emergency motion to amend the TIPO. The court overruled the motion finding

---

[1] Brooks was a minor at the time of the alleged incident but turned 18 before the final hearing date.

[2] For the sake of authenticity, the written allegations supporting the petition for a TIPO were not corrected for grammar, punctuation, or spelling.

that Brooks failed to meet the burden to amend the order and that the motion was not noticed properly. The final hearing was rescheduled for September 26, 2024.

At the hearing following C.J.'s testimony, Brooks' attorney stated that he believed there was enough evidence, using the preponderance of the evidence standard, for the IPO to be granted. He affirmatively stated on the record that Brooks agreed to the IPO. Thus, the circuit court granted the protective order. The IPO prevented Brooks from committing further acts of abuse or threats of abuse, stalking, or sexual assault. Additionally, he was ordered to surrender to the court his license to carry concealed firearms and remain 500 feet away from C.J. and three specific addresses. The IPO was to be effective for three years.

On August 11, 2025, C.J.'s stepmother filed an affidavit alleging that Brooks had violated the IPO by knowingly coming within five hundred (500) feet of C.J. on August 8, 2025, while C.J. was with friends from school. The police were called and submitted a report.

The circuit court ordered Brooks to appear on August 28, 2025, to respond to C.J.'s allegations that he had violated the IPO. On August 20, 2025, Brooks filed a response to the pending violation and a motion to amend the IPO from three (3) years to one (1) year. In his response, Brooks provided evidence that he had been in Florida at the time that the alleged IPO violation had occurred. His response also alleged that C.J. had filed false police reports and harassed

Brooks' family. Brooks pointed out that after the circuit court granted the IPO, a police investigation was conducted regarding the allegations C.J. made against Brooks, and that no criminal activity was found to have occurred. Thus, he requested that the circuit court amend the length of the IPO from three (3) years to one (1) year.

The circuit court entered an order on August 28, 2025, setting a hearing date for September 17, 2025, and providing for full discovery by both parties prior to the hearing. However, on September 16, 2025, C.J.'s GAL sent the following email to the circuit court and Brooks' counsel, which stated:

> On behalf of my client, I want to inform the Court and Defendant that a hearing on the alleged IPO violation is not necessary. Please accept this notice as an informal withdraw of the affidavit of violation. I will file a formal notice in the next file, but wanted to give everyone a heads up that we don't need the hearing tomorrow afternoon.

The circuit court entered an order on September 16, 2025, cancelling the September 17, 2025 hearing and denying Brooks' motion to amend the IPO's duration.

On September 26, 2025, Brooks filed a motion to alter, amend, or vacate the circuit court's September 16, 2025 order. He requested a hearing on the motion to amend the IPO and for attorneys' fees incurred in defending against C.J.'s withdrawn violation affidavit. Brooks cited manifest injustice as the basis

for both of his motions.  The circuit court denied Brooks' motion on October 9, 2025.  This appeal followed.

## ANALYSIS

On appeal, Brooks first argues that the circuit court violated both Kentucky Revised Statute ("KRS") 456.070(5) and his due process rights by denying his motion to amend the IPO without a hearing.  In the context of Domestic Violence Orders ("DVOs"),[3] a panel of this Court stated the following:

> At the outset, we note that [KRS] 403.750 provides for the issuance, reissuance, and amendment of DVOs. The procedures a court must undertake to issue, reissue, or amend a DVO differ significantly.  In order to issue a DVO, the court must conduct a hearing as provided for in KRS 403.745 and may only enter a DVO if the petitioner shows that by "a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur." . . .
>
> As to amending a DVO, as in the case sub judice, KRS 403.750(3) simply states that "[u]pon proper filing of a motion, either party may seek to amend a domestic violence order."  *The statute does not state if or when a hearing must be held or what evidence the court may or should consider before amending a DVO.*

---

[3] A DVO and an IPO differ mainly in regards to whom the order is intended to protect.  "[I]n order to extend the availability of protective orders to victims of certain harmful acts who are not 'family members' or 'members of an unmarried couple' with an alleged perpetrator, the General Assembly enacted KRS Chapter 456. Under Chapter 456, an IPO petition may be filed by a victim of 'dating violence and abuse,' 'stalking,' or 'sexual assault,' or by an adult on behalf of a minor who is a victim or dating violence and abuse, stalking, or sexual assault . . . .  [T]he statutes governing the respective protective orders read and operate in much the same way." *Smith v. Doe*, 627 S.W.3d 903, 909-10 (Ky. 2021) (citations omitted).

*Abdur-Rahman v. Peterson*, 338 S.W.3d 823, 825-26 (Ky. App. 2011) (emphasis added) (citations and footnotes omitted).

We find the same reasoning to be applicable in this case. KRS 456.070(5) does not mandate a hearing on every motion to amend, but merely states that "either party may seek to amend" an IPO. The only discussion of a "hearing" in KRS 456.070 is the hearing on the initial IPO under KRS 456.040(1)(a). Therefore, the circuit court did not err under KRS 456.070(5) by failing to hold a hearing on Brooks' motion to amend the IPO.

Regarding due process, and again in the context of domestic violence orders, Kentucky courts have repeatedly held that "[d]ue process requires an evidentiary hearing and a meaningful opportunity to be heard prior to the entry of a DVO." *Cottrell v. Cottrell*, 571 S.W.3d 590, 592 (Ky. App. 2019) (citation omitted). In this case, Brooks participated in a hearing regarding the issuance of the IPO for which he was given notice, the opportunity to file motions, cross-examine witnesses, and to receive written rulings from the court. The foregoing was sufficient to afford him due process.

Brooks' reliance on *Manning v. Willett*, 221 S.W.3d 394 (Ky. App. 2007), and *Wright v. Wright*, 181 S.W.3d 49 (Ky. App. 2005), is misplaced. Those cases involved the initial issuance of an IPO. Neither case stood for the

proposition that a court is required to conduct a hearing every time a restrained party requests an amendment or modification of an IPO.  We can discern no error.

Brooks next argues that the circuit court improperly denied his request for attorney's fees without a hearing.  Kentucky follows the "American Rule" whereby "attorney's fees are not recoverable in the absence of a statutory or contractual provision to the contrary, or with certain equitable exceptions." *Gibson v. Ky. Farm Bureau Mut. Ins. Co.*, 328 S.W.3d 195, 204 (Ky. App. 2010) (citation omitted).  In this case, Brooks has identified no statute, contractual provision, or equitable exception sufficient to authorize an award of attorneys' fees for defending against an alleged IPO violation that was withdrawn at the discretion of the petitioner's GAL prior to adjudication.  Brooks has provided no evidence that the affidavit was "baseless," and a GAL's decision to withdraw the affidavit does not constitute an admission that the allegation was frivolous, malicious, or in bad faith.  We affirm as to this issue.

Finally, Brooks argues that the judge in this case should be disqualified from conducting any hearing on remand of this case.  However, his argument is moot, as we are affirming the circuit court and not remanding for a hearing.  Additionally, Brooks' allegations of bias appear to stem from his disagreement with the court's rulings rather than any bias on the part of the circuit court judge.  We affirm.

## CONCLUSION

For the foregoing reasons, we affirm the Kenton Circuit Court's orders.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Carl E. Knochelmann, Jr.
Justin Fortner
Covington, Kentucky

BRIEF FOR APPELLEES:

Marianne S. Chevalier
Fort Mitchell, Kentucky